[Cite as *State v. Graham*, 2022-Ohio-4752.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

ISRAEL GRAHAM,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 21 MA 0060**

---

Criminal Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2018 CR 1106

**BEFORE:**
Carol Ann Robb, Gene Donofrio, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Reversed, Vacated, and Remanded in part; Affirmed in part.

---

*Atty. Paul J. Gains,* Mahoning County Prosecutor, *Atty. Edward A. Czopur,* Assistant Prosecutor, Mahoning County Prosecutor's Office, 21 West Boardman Street, 6th Floor, Youngstown, Ohio 44503 for Plaintiff-Appellee, and

*Atty. Louis M. DeFabio*, 4822 Market Street, Suite 220, Youngstown, Ohio 44512 for Defendant-Appellant.

Dated:  December 23, 2022

**Robb, J.**

{¶1} Defendant-Appellant Israel Graham appeals after being convicted of multiple offenses in the Mahoning County Common Pleas Court. As the state concedes, Appellant's conviction for having a weapon while under disability must be vacated because a jury waiver was not signed, filed, or voiced by the defendant in open court. Appellant also raises arguments on the following topics: accomplice instruction; sufficiency of the evidence; weight of the evidence; effectiveness of counsel; and merger. These arguments are without merit. For the following reasons, the conviction for having a weapon while under disability is reversed, and the case is remanded on this count. The other convictions are affirmed.

STATEMENT OF THE CASE

{¶2} This case arises from the armed robbery of Burger King by two masked men in Campbell, Ohio on October 28, 2018. Appellant was charged in the municipal court the day after the robbery. He was thereafter indicted for aggravated robbery, four counts of kidnapping (due to the four employees present), safecracking, and having a weapon while under disability. (12/13/18 Ind.).

{¶3} A superseding indictment deleted a kidnapping count because one of the employees, Tyrica Stephens, was alleged to have been complicit. (10/31/29 Ind.). On all offenses except the weapon while under disability count, Stephens was added as a co-defendant as was Caleb Spencer Lee Graham, who was alleged to be the masked perpetrator accompanying Appellant. In addition, a firearm specification was attached to the first five counts (for the two Grahams).

{¶4} The week before trial, defense counsel said he would be filing a motion in the subsequent week asking to waive a jury trial for the having a weapon while under disability count. There were no subsequent recorded discussions or filings on the matter of a jury waiver. The other counts were tried to a jury impaneled on April 20, 2021.

{¶5} At trial, the jury watched the security videos showing two men jump over the counter and proceed to rob the store. The one wearing a red, hooded sweatshirt with black pants carried a gun. The one wearing nearly all black had a smaller object in his

hand, which an employee said was a knife. They were wearing bandanas on their faces, sunglasses, gloves, hats, and hoods.

**{¶6}** The male employee testified he was cleaning and listening to music through earbuds when he saw a man in black jump over the counter holding a knife. He removed his ear buds and heard this man instruct him to open the register. (Tr. 196-197). He recognized the voice as belonging to Appellant, his former manager. (Tr. 197, 200-201). This employee can be seen on video attempting to open the register. As he worked as a cook, he said he did not know how to open the cash register. The man with the knife then directed this employee to the office and retrieved a different employee to open the register. (Tr. 198). The male employee was then held in the office where the safe was being emptied under the supervision of the man armed with a gun. The male employee initially believed the man with the gun was also wearing black as he walked behind the counter; but after watching the video, he noticed this man wore red and jumped the counter first. (Tr. 196-197, 204-207).

**{¶7}** The shift manager testified she first noticed the robbery when she was walking from the break room to rejoin Tyrica Stephens and the other female employee in the office (as it approached the 9:00 p.m. closing time for the dining room). At this time, a male in red approached her with a gun and directed her into the office. She was told to open the safe and was handed a bag to fill. (Tr. 177-178). The shift manager can be seen on video emptying the safe while other employees averted their eyes from the perpetrator armed with the gun. This process took longer than it would take to throw money into a bag because the safe also contained register drawers, which had to be emptied.

**{¶8}** When the male employee was ushered into the office, his escort said to the other perpetrator, "Don't point that at them." The shift manager testified she recognized this voice as belonging to Appellant, who was a former shift manager she worked with for a year; she said he had a "recognizable" voice. (Tr. 181, 183-185).

**{¶9}** The female employee who was led out of the office can be seen on video opening the registers under the supervision of the perpetrator in black. This employee did not testify.

Case No. 21 MA 0060

{¶10} The fourth employee, Tyrica Stephens, testified about the original charges against her in the indictment and disclosed that she pled guilty to felony obstructing official business with a recommendation of no prison time in return for her honest testimony. (Tr. 210-211). She said she met Appellant while working at Burger King, knew him for a year, and continued to have a relationship with him after he stopped working there. (Tr. 212, 223). In the days before and after the robbery, Appellant texted and called her. Stephens testified Appellant told her earlier in the week that he was going to rob the store on the upcoming Sunday (October 28, 2018). He thereafter called her while she was at work on Sunday to let her know when he was coming. (Tr. 217, 228, 234).

{¶11} When the robbery began, she heard the door chime from the office and looked out in time to see a perpetrator jump over the counter; the other, who wore red, pushed her and the other female employees back into the office. (Tr. 218, 229). She confirmed a female employee was led to the register after the male employee was brought to the office. (Tr. 220). Stephens testified when the male employee was ordered into the office, she recognized Appellant's voice. (Tr. 223). She believed Appellant made additional comments about the manager opening the safe. (Tr. 223, 232). She said the perpetrators left by the back door after the manager finished emptying the safe. (Tr. 220).

{¶12} After the robbery, Appellant asked Stephens to find out where the male employee lived. (Tr. 225). Appellant said he would pay her $600 and communicated with her about leaving money in her mailbox. A few days later, she retrieved $400 from her mailbox. (Tr. 225, 230). She considered it "hush money." (Tr. 235).

{¶13} A Campbell police officer testified he was called to Burger King at 8:49 p.m. He learned $2,000 was taken from the safe and additional money was taken from the registers. (Tr. 241). He was informed Appellant worked at the store until two weeks before the robbery. (Tr. 242).

{¶14} A detective testified his investigation showed the robbery took place at 8:40 p.m. as confirmed by the video. Appellant told the detective he was in the Youngstown area with his brother, Caleb, on the day of the robbery but left for Kent at 4:30 or 5:30 p.m. where he spent time with his girlfriend. The detective was unable to confirm Appellant's alibi because Appellant's girlfriend said he was not there when she got off work at 7:30 p.m. and she did not know the exact time he arrived. (Tr. 267-268, 292).

{¶15} Appellant provided his cell phone number to the detective, which matched the number of the phone recovered from him when he was arrested. It also matched the number of the phone in communication with Tyrica Stephens before and after the robbery as confirmed through a provider subpoena and a phone extraction. (Tr. 270-273, 289, 293). The phone was registered in the name of Appellant's brother. (Tr. 270).

{¶16} Appellant's girlfriend at the time of the robbery testified Appellant asked her to be his alibi and to untruthfully claim he was at her apartment in Kent, Ohio during the robbery. (Tr. 250). She testified the police showed her Appellant's statement reporting he arrived at her apartment between 6:30 and 7:00 p.m. but this was not true as he arrived later that night. (Tr. 251-252). On cross-examination, it was pointed out she informed police Appellant arrived between 8:00 and 9:00 p.m. while telling them she was not sure of the time. She then answered in the affirmative when defense counsel asked, "between 8 and 9 p.m. he was up around your apartment, correct?" (Tr. 256). She and the detective both testified the drive to Kent takes 45 minutes to an hour. (Tr. 256, 288).

{¶17} The jury found Appellant guilty as charged (but made special findings on the kidnapping counts as the victims were released in a safe place unharmed, which decreased those offenses to second-degree felonies). At sentencing, the court found Appellant guilty of having a weapon while under disability. Appellant was sentenced to ten years for aggravated robbery, eight years for each kidnapping to run consecutively to each other but concurrent to count one, twelve months for safecracking to run consecutive to count one, a concurrent sentence of twelve months for having a weapon while under disability, and three years on a sole (merged) firearm specification required to run consecutively for a total of 28 years in prison. Appellant filed a timely appeal from the June 16, 2021 sentencing entry.

## ASSIGNMENT OF ERROR ONE: JURY WAIVER

{¶18} Appellant sets forth five assignments of error, the first of which provides:

"The trial court lacked jurisdiction to try Appellant on the Having Weapons While Under a Disability charge because there was no knowing, intelligent and voluntary waiver of Appellant's right to a jury trial and the trial court failed to comply with the requirements of R.C. 2945.05."

**{¶19}** At an October 22, 2020 pretrial, defense counsel asked, "not knowing what will come out at trial, but based on possible prejudice, we would ask the Court to bifurcate the charge of having a weapon while under disability and wait and see what the resolution is at the time of trial and potentially do a bench trial regarding that count?" When the court asked if the state had an objection, the prosecution voiced no objection. (Tr. 5). The court made no further comment on the topic at that time.

**{¶20}** At an April 14, 2021 pretrial, after a plea offer was discussed, the court asked defense counsel if he was planning on a bench trial for the charge of having a weapon while under disability. Defense counsel responded, "I would do that at a bench trial. I think orally I was planning on making that motion on Monday." The court replied, "Yeah, that's fine, just so we all know what to prepare for." The court's only questions to Appellant related to whether he heard everything and whether he rejected the state's final plea offer. (Tr. 3). No mention of a jury waiver was made at the next pretrial on April 19, 2021 or on the morning of trial.

**{¶21}** All counts except having a weapon while under disability were tried to the jury. After the state's last witness, the prosecution introduced Appellant's prior delinquency adjudication for the court to use in trying that count, and defense counsel stipulated to the exhibit. (Tr. 295).

**{¶22}** At sentencing, the prosecutor said Appellant waived a jury trial on the charge of having a weapon while under disability, noting the charge had been tried to the court. (Sent.Tr. 2). Defense counsel said, "I agree, the defendant waived any requirement of the court not, not to look at anything but the weapons under disability, you know, pending the made decision. So he understands." The court then announced a decision finding Appellant guilty of having a weapon while under disability. (Sent.Tr. 3). The twelve-month sentence for this offense was run concurrent to the other offenses.

**{¶23}** There is a constitutional right to a jury trial in criminal prosecutions. U.S. Constitution, Eighth Amendment; Ohio Constitution, Article I, Section 5 ("The right of trial by jury shall be inviolate"); Ohio Constitution, Article I, Section 10 ("the party accused shall be allowed * * * to have * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed"). The waiver of the right is governed by rule and statute.

**{¶24}** Crim.R. 23(A) provides in relevant part: "Trial by Jury. In serious offense cases the defendant before commencement of the trial may knowingly, intelligently and voluntarily waive in writing his right to trial by jury. Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney." The pertinent statute provides:

> In all criminal cases pending in courts of record in this state, the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof. It shall be entitled in the court and cause, and in substance as follows: "I _____, defendant in the above cause, hereby voluntarily waive and relinquish my right to a trial by jury, and elect to be tried by a Judge of the Court in which the said cause may be pending. I fully understand that under the laws of this state, I have a constitutional right to a trial by jury."
>
> Such waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel. Such waiver may be withdrawn by the defendant at any time before the commencement of the trial.

R.C. 2945.05.

**{¶25}** Accordingly, the waiver of the right to a trial by jury must be made in writing, signed by the defendant, and filed as a part of the record; a waiver must also be made in open court. *State v. Lomax*, 114 Ohio St.3d 350, 2007-Ohio-4277, 872 N.E.2d 279, ¶ 49. "Absent strict compliance with the requirements of R.C. 2945.05, a trial court lacks jurisdiction to try the defendant without a jury." *State v. Pless*, 74 Ohio St.3d 333, 339, 658 N.E.2d 766 (1996) (reversing where the defendant signed a jury waiver in open court but the waiver was never filed of record).

**{¶26}** To comply with the statutory requirement that a jury waiver be made in open court, there must be "evidence in the record of the proceedings that the defendant acknowledged the waiver to the trial court while in the presence of counsel, if any. Absent such evidence, the waiver does not comply with the requirements of R.C. 2945.05 and is therefore invalid." *Lomax*, 114 Ohio St.3d 350 at ¶ 42. In *Lomax*, a written waiver was

filed, but the trial court's passing mention that there was going to be a jury waiver did not satisfy the "in open court" requirement as the trial court did not address the defendant and have him acknowledge the jury waiver in the courtroom. *Id.* at ¶ 45-49.

**{¶27}** Appellant cites a Tenth District case refusing to abandon the statutory requirements for a multi-count indictment where the accused allegedly waived a jury trial on only the count of having a weapon while under disability. *State v. Banks*, 2019-Ohio-5440, 151 N.E.3d 198, ¶ 29 (10th Dist.). *See also State v. Johnson*, 5th Dist. Stark No. 2016CA00119, 2017-Ohio-1251, ¶ 16 (no written waiver was reviewed and signed by the defendant and the record did not reflect the court personally address the defendant to ascertain it was his, not merely his attorney's, intention to waive his right to a jury trial on the weapons while under disability charge). This court has also applied the requirements of the rule and statute under such circumstances, where counsel asked for a bench trial on one count and a jury trial was conducted on the remaining counts. *State v. Everson*, 2016-Ohio-87, 57 N.E.3d 289, ¶ 62 (7th Dist.) (vacating the conviction for having a weapon while under disability with no bar to re-prosecution).

**{¶28}** Here, a written jury waiver was not signed or filed, and a jury waiver was not orally acknowledged by Appellant in open court. The state's brief concedes the error and agrees the conviction for having a weapon while under disability must be vacated. As there was no valid jury waiver, the trial court lacked authority to conduct a bench trial. This assignment of error is sustained. Appellant's conviction for having a weapon while under disability is reversed with this charge remanded for further proceedings.

ASSIGNMENT OF ERROR TWO: ACCOMPLICE INSTRUCTION

**{¶29}** Appellant's second assignment of error contends:

"The trial court plainly erred by not giving the jury an accomplice testimony instruction."

**{¶30}** The superseding indictment charged Appellant, Caleb Graham, and Tyrica Stephens in the aggravated robbery, three kidnappings, and safecracking. Stephens was also charged with obstructing official business. The state eventually dismissed all counts against Stephens except obstructing official business to which she pled guilty. She was called by the state to testify against Appellant as set forth in our Statement of the Case supra.

{¶31} Appellant complains the trial court failed to provide the jury with an accomplice instruction under R.C. 2923.03(D). This statute provides:

> If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
>
> The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth.

R.C. 2923.03(D).

{¶32} Appellant acknowledges there was no objection to the trial court's jury instructions. In this assignment of error, Appellant claims the lack of the accomplice instruction was plain error. In his final assignment of error on ineffective assistance of counsel, Appellant argues counsel's failure to object and request an accomplice instruction was deficient performance prejudicing the outcome of his trial.

{¶33} Pursuant to Crim.R. 30(A), failure to object to jury instructions, stating specifically the error and the grounds, waives all but plain error. Crim.R. 52(B) provides plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Plain error is a discretionary doctrine the appellate court may choose to use only with the utmost care in exceptional circumstances when required to avoid a manifest miscarriage of justice. *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 62. To establish plain error, the defendant must demonstrate an obvious error which affected the outcome of trial. *State v. Graham*, 164 Ohio St.3d 187, 2020-Ohio-6700 at ¶ 93, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002). "The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential standard for

reviewing ineffective assistance of counsel claims." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.

**{¶34}** Ineffective assistance of counsel arguments require a showing of both deficient performance and resulting prejudice. *State v. Carter*, 72 Ohio St.3d 545, 557, 651 N.E.2d 965 (1995), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In evaluating the deficiency prong of the test, the defendant must show counsel's representation fell below an objective standard of reasonableness. *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989). Our review is highly deferential to counsel's decisions as there is a strong presumption counsel's conduct was within the wide range of reasonable professional assistance. *Id.* at 142. Additionally, if there was no prejudice, then there is no need to review the deficiency of performance and vice versa. *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000).

**{¶35}** On the prejudice prong, the defendant must show there is a reasonable probability the result of the proceedings would have been different but for the deficient performance. *Bradley*, 42 Ohio St.3d at 142. Lesser tests of prejudice have been rejected: "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 142, fn. 1, quoting *Strickland*, 466 U.S. at 693. Prejudice from defective representation justifies reversal only where the results were unreliable or the proceeding was fundamentally unfair due to the performance of trial counsel. *Carter*, 72 Ohio St.3d at 558, citing *Lockhart v. Fretwell*, 506 U.S. 364, 369, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993).

**{¶36}** The state initially argues an accomplice instruction would not have been warranted even though Tyrica Stephens was indicted as an accomplice. The state relies on the fact this witness only pled guilty to the obstruction offense, claiming this showed she was not in fact an accomplice and the prosecution changed its mind as to the allegations against her. Stephens testified at trial that although she failed to warn her co-workers before the robbery or tell the police the truth after the robbery, she provided no assistance in the robbery but merely listened to Appellant's plans.

**{¶37}** Notably, the statute specifically refers to an "alleged accomplice." R.C. 2923.03(D). *See also State v. Perez*, 124 Ohio St.3d 122, 2009-Ohio-6179, 920 N.E.2d 104, ¶ 131 ("at the very least, an 'accomplice' must be a person indicted for the crime of

complicity"). The state essentially argues Stephens was no longer alleged to be an accomplice by the time of trial even though her plea deal was dependent on her testifying. However, in a case where the state claimed a witness was not involved in the murders but the defendant told the police the witness was involved, the Supreme Court said an accomplice instruction should have been provided because the witness' "credibility and status as an accomplice were before the jury, and the jury had to determine how much weight to give Young's testimony." *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845, ¶ 77-83 (but then found no plain error in failing to give a specific accomplice instruction).

{¶38} In any event, as the state alternatively argues, there was no prejudice from the lacking accomplice instruction. Appellant cites to three factors to weigh when reviewing a trial court's failure to give the accomplice instruction: (1) whether the accomplice's testimony was corroborated by other evidence introduced at trial; (2) whether the jury was aware from the accomplice's testimony that he benefited from agreeing to testify against the defendant; and (3) whether the jury was instructed generally regarding its duty to evaluate the credibility of the witnesses and its province to determine what testimony is worthy of belief. *State v. Lewis*, 7th Dist. Mahoning No. 07 MA 199, 2009-Ohio-5075, ¶ 44. *See also Yarbrough*, 104 Ohio St.3d 1 at ¶ 83.

{¶39} All three factors weigh in favor of finding a lack of prejudice to the defense. First, the testimony presented by Stephens was corroborated by other evidence at trial. Appellant provided his phone number to the detective, and the phone he carried at his arrest matched this number. The detective confirmed this phone communicated with Stephens before and after the robbery. Although the detective's testimony on direct examination did not discuss the content of the various texts, the detective later disclosed the testimony given by Stephens was corroborated by the content of the texts he viewed from the extraction report (after he was asked about the content on cross-examination). Furthermore, two other testifying employees had previously worked with Appellant at this store as well, and they too recognized Appellant's voice during the robbery. Their identification testimony was further corroboration of the testimony given by Stephens.

{¶40} Second, the jury was aware from the testimony of Stephens that she pled guilty to only the charge of obstructing official business with the state dismissing the

charges of aggravated robbery, kidnapping, and safecracking and the state refraining from recommending prison time. It was further disclosed the deal was in return for her cooperation and honest testimony in this case. Moreover, defense counsel cross-examined the witness as to her interest or bias.

{¶41} Third, the jurors were instructed about their duty regarding the credibility of the witnesses. Before jury selection, the court instructed the prospective jurors, "You will be the sole judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony." (Tr. 4-5). After the jury was impaneled, the court's preliminary instructions advised: "it is your exclusive duty to decide all questions of fact submitted to you. In connection with this duty you must determine the effect and value of the evidence." (Tr. 140). Further, the court explained, "As jurors, you have the sole and exclusive duty to decide the credibility of the witnesses who will testify in this case, which simply means it is you who must decide whether to believe or disbelieve a particular witness, and how much weight, if any, to give the testimony of each witness." (Tr. 143-144).

{¶42} The court then spoke of the tests of truthfulness employed in everyday life, giving examples such as: appearance on the stand; manner of testifying; opportunity to see, hear, and know; accuracy of memory; frankness; intelligence; and *interest and bias*. The jurors were again told to assign the weight to each witness as they deemed proper and advised they could believe or disbelieve all or any part of a witness's testimony. They were further told they were not required to believe a witness simply because the testimony was given under oath. (Tr. 144, 329). The court also provided explanations regarding the number of witnesses and discrepancies in testimony. (Tr. 145-146).

{¶43} In the final jury instructions, the court reminded the jury, "you are the sole judges of the facts, the credibility of the witnesses, and the weight of the evidence. * * * It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief." (Tr. 326, 328). The court reiterated the instructions on the tests of truthfulness in everyday life, including "interest and bias" under all the facts of the case. (Tr. 328-329).

{¶44} Under all of these circumstances, the allegation raised here did not affect Appellant's substantial rights, as there was no reasonable probability the specific statutory

accomplice instruction would have changed the outcome of the proceeding. This assignment of error is overruled.

ASSIGNMENT OF ERROR THREE: SUFFICIENCY & WEIGHT

**{¶45}** Appellant's third assignment contains two different topics, alleging:

"The jury's and trial court's verdicts of Guilty were not supported by sufficient evidence and were against the manifest weight of the evidence."

**{¶46}** Whether the evidence is legally sufficient to sustain a conviction is a question of law dealing with adequacy. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). An evaluation of witness credibility is not involved in a sufficiency review, as the question is whether the evidence is sufficient if it is believed. *State v. Yarbrough*, 95 Ohio St.3d 227, 2002-Ohio-2126, 767 N.E.2d 216, ¶ 79, 82; *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001). In other words, sufficiency involves the state's burden of production rather than its burden of persuasion. *Thompkins*, 78 Ohio St.3d at 390 (Cook, J., concurring).

**{¶47}** In reviewing the sufficiency of the evidence, the court views the evidence and reasonable inferences in the light most favorable to the prosecution to ascertain whether any rational juror could have found the elements of the offense proven beyond a reasonable doubt. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). *See also State v. Filiaggi*, 86 Ohio St.3d 230, 247, 714 N.E.2d 867 (1999) (reasonable inferences are viewed in favor of the state); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (all of the evidence is to be considered in the light most favorable to the prosecution, including reasonable inferences).

**{¶48}** The contested element as to all offenses is Appellant's identity as a perpetrator. Three Burger King employees testified they recognized Appellant's voice coming from a masked perpetrator during the robbery. Appellant was a former shift manager. Moreover, one of the employees testified Appellant informed her about his plan to rob the store in the days and hours before the robbery occurred. He also discussed the topic and provided her money in the days after the robbery. His phone records confirmed the communications with this employee.

**{¶49}** For a sufficiency review, the question is merely whether "any" rational trier of fact could have found the contested element satisfied beyond a reasonable doubt.

*State v. Getsy*, 84 Ohio St.3d 180, 193, 702 N.E.2d 866 (1998), quoting *Jackson*, 443 U.S. at 319. Moreover, circumstantial evidence inherently possesses the same probative value as direct evidence. *State v. Treesh*, 90 Ohio St.3d 460, 485, 739 N.E.2d 749 (2001). A rational fact-finder could find Appellant was one of the perpetrators of the offenses occurring at Burger King on the night in question.

**{¶50}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." *Thompkins*, 78 Ohio St.3d at 387. Although the effect of the evidence in inducing belief is evaluated, weight of the evidence is not a question of mathematics. *Id.* A weight of the evidence review considers whether the state met its burden of persuasion. *Id.* at 390 (Cook, J., concurring) (as opposed to the burden of production involved in a sufficiency review). When a defendant claims the conviction is contrary to the manifest weight of the evidence, the appellate court is to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, 78 Ohio St.3d at 387.

**{¶51}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact occupies the best position from which to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

**{¶52}** Where a case was tried by a jury, only a unanimous appellate court can reverse on manifest weight of the evidence grounds. Ohio Constitution, Article IV, Section 3(B)(3). The power of the court of appeals to sit as the "thirteenth juror" is limited in order to preserve the jury's primary function of weighing the evidence. *Thompkins*, 78 Ohio St.3d at 389.

{¶53} Appellant points out the incident lasted only minutes and he was identified by only a few spoken words. He focuses on perceived conflicts in the employees' testimony or credibility issues. Appellant points out the male employee testified both perpetrators wore black when the video showed the one with the gun wearing a red sweatshirt. Regardless, the perpetrator who approached this witness while armed with a knife was wearing black, and upon seeing the video, the witness realized the other perpetrator wore red. We note the one in red also wore some black (his pants).

{¶54} Contrary to Appellant's other suggestion, the male employee's credibility was not damaged merely because he did not notice the perpetrator who carried the gun until after he jumped the counter. He was cleaning and wearing earbuds when the robbery began. The jury viewed the video, showing some of the events and the store's layout.

{¶55} In addition, this witness's testimony about hearing Appellant's voice while being ordered to open the register does not contradict the female employees' testimony that Appellant spoke when he approached the office. The witnesses and the video showed the perpetrator escorting the male employee to the office and then retrieving an employee who could open the registers.

{¶56} As Appellant points out, Tyrica Stephens testified she heard Appellant tell the shift manager to open the safe and tell the male employee to get in the office, but she said she did not hear the other robber speak. The shift manager testified she heard Appellant tell the other robber not to point the gun at the employees but believed a different voice ordered her to open the safe. We point out the men wore masks covering their mouths and the employees were averting their eyes, which could have made it difficult to discern which person was speaking when they were near each other. Again, both perpetrators were in (or at the entry of) the office at one point. As the state emphasizes, all three employees said they recognized Appellant's voice during the robbery. He worked at Burger King for approximately a year. He was a shift manager and had recently stopped working there. The jury was within its province to accept the testimony of the three employees identifying Appellant's voice.

{¶57} Furthermore, one of the employees further incriminated Appellant by testifying about his disclosures to her before and after the robbery. He told her his plan

in the days before the robbery and even warned her before entering the store. After the robbery, he promised her money, which she received. According to her, Appellant also asked her for the address of the male employee, who identified Appellant's voice to the first responding officer. The evidence presented by the state (discussed here and further reviewed in our Statement of the Case) was believable for purposes of a weight of the evidence review.

**{¶58}** Finally, Appellant argues it is incredible to believe he committed this robbery at 8:40 p.m. when his former girlfriend testified on cross-examination that he arrived in Kent between 8:00 and 9:00 p.m. and the drive to Kent takes 45 minutes to an hour. Defense counsel asked her, "But you did tell the police that he did show up between 8:00 and 9:00 but you weren't sure; isn't that correct?" She agreed. Counsel then asked if Appellant was with her that night to which she responded, "Not during the time of the robbery; but, yes." Counsel then said, "Well, I'm not asking you about that. I'm just saying between 8 and 9 p.m. he was up around your apartment, correct? The witness responded in the affirmative. (Tr. 256).

**{¶59}** In the rebuttal portion of closing argument, the state urged the final answer was the result of the witness being "boxed in" by defense counsel's limited questioning. As the state points out, this witness testified Appellant asked her to untruthfully provide him with an alibi even though she was not with him at the time of the robbery. When eliciting the witness's estimate on Appellant's time of arrival, the defense questioning still contained the disclaimer that she told police she was not sure about her estimated time window. The detective also pointed out this witness was unsure about Appellant's Kent arrival time when questioned after the robbery. She was sure, however, the statement Appellant provided to police about his Kent arrival time was untrue. The issue was one for the jury to resolve in conjunction with all of the other evidence presented.

**{¶60}** "When more than one competing interpretation of the evidence is available and the one chosen by the jury is not unbelievable, we do not choose which theory we believe is more credible and impose our view over that of the jury." *State v. Baker*, 7th Dist. Mahoning No. 19 MA 0080, 2020-Ohio-7023, ¶ 148, citing *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999). A thorough review of the record does not indicate this is the "exceptional" case in which the evidence weighs "heavily" against

the conviction and requires the exercise of our limited "thirteenth juror" discretion to grant a new trial. *See Lang*, 129 Ohio St.3d 512 at ¶ 220. Accordingly, the jury verdicts were not contrary to the manifest weight of the evidence. This assignment of error is overruled.

### ASSIGNMENT OF ERROR FOUR: MERGER

{¶61} Appellant's fourth assignment of error argues:

"The trial court erred in imposing multiple sentences for multiple counts of Kidnapping, Aggravated Robbery and Safecracking as said offenses were allied offenses and should have merged, pursuant to the provisions of R.C. 2941.25."

{¶62} At sentencing, only the firearm specifications were merged. Appellant argues the trial court committed plain error by failing to merge various offenses. In the subsequent assignment of error, he contends defense counsel was ineffective for failing to raise the issue of merger at sentencing. Appellant points out all the offenses occurred in a matter of minutes during the robbery of Burger King. He contends the conduct constituting the three counts of kidnapping was merely incidental to the aggravated robbery, and safecracking was merely performed in order to reach the object of the aggravated robbery. He says the restraint and the movement exercised over the victims was minimal.

{¶63} The constitutional double jeopardy protection against multiple punishments for the same offense is codified in R.C. 2941.25. *In re A.G.*, 148 Ohio St.3d 118, 2016-Ohio-3306, 69 N.E.3d 646, ¶ 11; *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 10, 12. This statute provides:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

R.C. 2941.25.

{¶64} Accordingly, there are three categories where the offenses cannot be merged and there can be multiple punishments: (1) the offenses are dissimilar in import or significance (which occurs "when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable"); (2) the offenses were committed separately (even if similar in import); or (3) the offenses were committed with separate animus or motivation (even if similar in import). *Ruff*, 143 Ohio St.3d 114 at ¶ 20, 23, 25.

{¶65} "Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import." *Id.* at ¶ 30. There is no bright-line rule governing the comparison of two offenses, and thus, the analysis may "result in varying results for the same set of offenses in different cases." *Id.* at ¶ 30, 32. Nevertheless, we review the trial court's merger decision de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 26.

{¶66} As to the three kidnapping counts, offenses are clearly dissimilar in import or significance "when the defendant's conduct constitutes offenses involving separate victims * * *." *Ruff*, 143 Ohio St.3d 114 at ¶ 23. Consequently, the three kidnapping counts were not subject to merger because the following three victims were held against their will during the armed robbery: the male employee who was ordered to open the register at knifepoint and then held at gunpoint; the female shift manager who was ordered to open the safe while being held at gunpoint; and the female employee who was held at gunpoint in the office and then led to the registers by the perpetrator with the knife.

{¶67} As to the argument on a kidnapping merging with aggravated robbery, the state points out the money was stolen from a business and Burger King was the victim of aggravated robbery. As this court previously concluded, the business was the victim of robbery while the employees were each the victim of an abduction. *State v. Boyd*, 7th Dist. Columbiana No. 19 CO 0007, 2020-Ohio-812, ¶ 41 (separate victims and separate harms where the victim of the aggravated robbery was a pharmacy and three people were shown to be the victims for the abduction charges), citing *State v. Junod*, 3d Dist. Mercer No. 10-18-08, 2019-Ohio-743, ¶ 62 (finding the defendant's actions caused separate and

distinct harms where the kidnapping victim suffered emotional harm and the business suffered economic harm). As there were separate harms and separate victims, the offenses were not subject to merger in this case.

**{¶68}** It is also noted the perpetrators did not simply display a weapon while committing a robbery which incidentally scared the victims into standing still or handing over money. Rather, victims were led around the store. For instance, the male victim was retrieved from the back of the store by a man armed with a knife and led to a register; he was grabbed and then led to the office where he was then held at gunpoint and pushed by the other perpetrator. The female shift manager was led into the office, touched on the back, and ordered to empty the safe while being monitored by an armed man. Another female employee was held at gunpoint in the office during the safecracking and then led to the front register and to the drive-through register by the man with the knife.

**{¶69}** We turn to the argument that safecracking should be merged with aggravated robbery. The safecracking occurred during an aggravated robbery. However, as the state points out, the aggravated robbery existed even without the conduct of forcing open the safe with intent to commit an offense (theft). *See* R.C. 2911.31(A) (the elements of safecracking are: "with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox"). That is, a perpetrator with a knife (accompanied by an accomplice with a gun) obtained money from register drawers after ordering the female employee to open two cash registers.

**{¶70}** Additionally, aggravated robbery includes not just the commission of theft but also the attempted commission of theft. *See* R.C. 2911.01(A)(1) ("in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense * * * Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it"). As such, aggravated robbery was initially committed when the male employee was ordered to open the register at knifepoint (even though he was unsuccessful at opening them). Under the circumstances elicited at trial, including the contents of the security video, the offense of safecracking was not subject to merger with aggravated robbery as separate harms were identifiable.

Case No. 21 MA 0060

**{¶71}** We also note the factual roles played by the perpetrators in the thefts from each physical source of funds while they occupied the shifting roles of principal or accomplice as to certain tasks. Considering the division of labor among the separately armed offenders, it would be reasonable to conclude a separate animus existed as to the drawers versus the safe.

**{¶72}** This assignment of error is overruled as the trial court did not err in failing to merge the offenses. Because Appellant was not entitled to merger, defense counsel was not ineffective in failing to raise the issue of merger, as the outcome would not have changed had the issue been raised at sentencing. This disposes of the second part of Appellant's next assignment of error.

<u>ASSIGNMENT OF ERROR FIVE: EFFECTIVENESS OF COUNSEL</u>

**{¶73}** This assignment encompasses arguments we addressed while analyzing other assignments of error, Appellant's final assignment of error contends:

"Appellant was denied the effective assistance of counsel in the trial court."

**{¶74}** As set forth above, ineffective assistance of counsel arguments require a defendant to establish both deficient performance and resulting prejudice. *Carter*, 72 Ohio St.3d at 557, citing *Strickland*, 466 U.S. at 687. The plain error review for prejudice, which asks whether there is a reasonable probability the result would have been different, is "the same deferential standard for reviewing ineffective assistance of counsel claims." *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22

**{¶75}** First, Appellant alleges defense counsel was ineffective by failing to object to the lack of an accomplice instruction under R.C. 2923.03(D). We refer to assignment of error two, where Appellant argues the trial court committed plain error in failing to give the statutory accomplice instruction. Above, we concluded there was no prejudice to the defense after considering various circumstances (including corroboration, the jury's awareness of the witness's plea agreement, cross-examination, and the multitude of other jury instructions on witness credibility).

**{¶76}** Second, Appellant alleges defense counsel was ineffective by failing to address the issue of merger at sentencing. We refer to the prior assignment of error, where Appellant argues the trial court committed plain error in failing to merge various offenses before imposing a sentence on each offense. Above, we concluded counsel

was not ineffective in failing to raise the argument of allied offenses of similar import at sentencing as the offenses were not subject to merger. Accordingly, this assignment of error is overruled.

{¶77} For the foregoing reasons, Appellant's conviction of having a weapon while under disability is reversed, vacated and remanded to the court. The other convictions are affirmed.

Donofrio, P J., concurs.

D'Apolito, J., concurs.

[Cite as *State v. Graham*, 2022-Ohio-4752.]

_____

For the reasons stated in the Opinion rendered herein, the judgment of the Court of Common Pleas of Mahoning County, Ohio, for the conviction of having weapons while under disability is reversed and vacated. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion for that count. The other convictions are affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

### <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**