# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
COLUMBIANA COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

TYREZ L. BOYD,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 19 CO 0007**

---

Criminal Appeal from the
Court of Common Pleas of Columbiana County, Ohio
Case No. 2018 CR 60

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, David A. D'Apolito, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Robert Herron*, Columbiana County Prosecutor and *Atty. John E. Gamble*, Assistant Prosecuting Attorney, 105 South Market Street, Lisbon, Ohio 44432, for Plaintiff-Appellee

*Atty. Rhys B. Cartwright-Jones*, 42 N. Phelps Street, Youngstown, Ohio 44503-1130, for Defendant-Appellant.

Dated:  March 3, 2020

_____

**WAITE, P.J.**

**{¶1}**  Appellant Tyrez L. Boyd appeals a February 1, 2019 Columbiana County Common Pleas Court judgment entry convicting him on one count of aggravated robbery and three counts of abduction.  Appellant contests both his convictions and his sentence.  As to his convictions, he argues that the trial court's verdict is not supported by sufficient evidence and is against the manifest weight of the evidence.  Regarding his sentence, Appellant argues that the trial court erroneously failed to merge his robbery and abduction convictions.  For the reasons provided, Appellant's arguments are without merit and are overruled.  The judgment of the trial court is affirmed.

<u>Factual and Procedural History</u>

**{¶2}**  On September 26, 2017, D.D. and L.K. both worked a shift as technicians at Buckeye Pharmacy ("Buckeye") in Calcutta, Columbiana County.  During their shift, an African American woman estimated to be in her thirties entered the pharmacy and approached the counter.  The woman asked the technicians about a product.  The technicians noticed that the woman kept looking behind them and appeared to be scanning the pill bottles behind the counter as if taking note of their location.  The technicians took particular note as the woman had to stand on her tip-toes to see over the counter.  After the woman left without making a purchase, the technicians wondered aloud whether the woman had been planning a robbery.

**{¶3}**  On September 27, 2017, both D.D. and L.K. worked as technicians and B.B. worked as the pharmacist.  D.D. and L.K. wore black smocks and B.B., as the pharmacist, wore a white smock.  At some point after the store opened, an African American male

entered the door carrying a piece of paper and approached D.D. at the counter.  The man initially acted as if he was picking up a prescription, then he pulled a gun and ordered the three women to the floor.  Shortly thereafter, a second person entered the pharmacy to assist in the robbery.

{¶4}   One of the men touched B.B. on the shoulder and told her to get up.  He grabbed a black trick-or-treat bag that was hanging on a wall and ordered her to fill the bag with opiates.  As she filled the bag, the man threw bottles on the floor, apparently confirming B.B.'s claims that certain medications were not opiates.  After the bag was filled, the second man zip tied all three women's hands behind their backs and led them to the employee bathroom.  He told them to stay in the restroom, and then used his sleeve to close the door.  The women remained in the restroom until they heard the door buzzer, indicating that the robbers had left.  After freeing their hands, the women removed their smocks to avoid being detected in case the robbers were still in the area.  After ensuring the robbers had left, they exited the pharmacy through a back door and went to a nearby bank to call 911.

{¶5}   It is unclear as to whether the following event occurred before or after the robbery, but T.K., the brother of L.K., noticed a dark car driving erratically near him on the freeway.  He described the vehicle as a dark blue Impala.  According to T.K., the vehicle had a driver and two passengers, although in his initial statement to police he mentioned only two individuals in the car.  T.K. saw the vehicle several times during his drive, including near a school driving an estimated 60 mph in a 35 mph zone.  He also noticed the car as the two vehicles were stopped at a red light.  He testified that the occupants

were moving around and appeared to be changing clothes.  He lost sight of the vehicle for the final time as it turned on the street where Buckeye is located.

{¶6}  G.F., another witness, noticed a dark Impala or Pontiac parked by the pharmacy, blocking an access road.  When G.F. saw the vehicle, he was entering a nearby McDonald's.  When he exited the McDonald's, the vehicle had pulled behind his car.  He noticed that the driver was slouched down with his eyes at steering wheel level.  Fearing that he was about to be robbed, G.F. kept his eye on the car, which abruptly backed up and returned to the access road.  He then saw two African American individuals dressed in all black run out of the pharmacy carrying a black canvas bag.  One of the individuals entered the car's passenger seat and the other entered the back seat.  G.F. sensed that a robbery had just occurred so he followed the vehicle and dialed 911.  One of the roads that G.F. traversed during the pursuit was Dresden Ave.

{¶7}  During the investigation, law enforcement officials spoke with agencies in Franklin and Clark Counties.  Both counties had encountered similar robberies where a pharmacy was robbed for opiates and the employees' hands were tied with zip ties.  Through the joint investigation, Appellant's name arose as a suspect.  Then, Columbiana County Prosecutor's Office Investigator Troy Walker received information that someone had found Hydrocodone and Acetaminophen combination 7.5 mg-500 mg pills in two Mallinckrodt manufacturer's bottles laying on Dresden Avenue.  Manufacturer's bottles contain a large amount of pills and are not available to the general public.  Among the missing medications from Buckeye were Hydrocodone and Acetaminophen combination 7.5 mg-500 mg pills in Mallinckrodt manufacturer's bottles.

{¶8}   One of the bottles had a fingerprint that was uploaded into the Automated Fingerprint Identification System ("AFIS") and returned a match for Appellant.  Appellant's fingerprint had recently been added into the system for a similar robbery committed in Clark County.

{¶9}   A search of Appellant's phone records triangulated his location the day of the robbery between two points:  Cadiz, Ohio and Follansbee, West Virginia.  Appellant resides in Indiana.

{¶10}  On February 14, 2018, Appellant was charged in a secret indictment for one count of aggravated robbery, a felony of the first degree in violation of R.C. 2911.01(A)(1), and three counts of abduction, felonies of the third degree in violation of R.C. 2905.02(A)(2).  Each of the abduction counts pertains to a separate victim.

{¶11}  On January 14, 2019, the matter proceeded to a one-day bench trial.  On January 24, 2019, the trial court found Appellant guilty on all counts.

{¶12}  On February 1, 2019, the trial court sentenced Appellant to 11 years of incarceration on the aggravated robbery conviction and three years on each count of abduction.  The court ordered the sentences to run consecutively, for an aggregate total of twenty years.  The court also ordered Appellant's sentence to run consecutively to the sentence he was ordered to serve for his Clark County convictions.  It is from this entry that Appellant timely appeals.

<u>ASSIGNMENT OF ERROR NO. 1</u>

The trial court erred in entering a conviction for failure of the state to prove the element of identity either sufficiently or within the manifest weight of the evidence.

<u>Case No. 19 CO 0007</u>

{¶13} Appellant contends that the trial court's verdict is not supported by sufficient evidence and is against the manifest weight of the evidence. Both arguments attack the trial court's finding as to the identity of the robber. First, he argues that the state relied on inadmissible prior bad acts evidence, which included evidence of similar robberies committed in Clark County. Second, he argues that none of the witnesses were able to identify him as one of the robbers.

{¶14} The state explains that the bad acts evidence to which Appellant refers pertains to information obtained by law enforcement in Clark County, which investigated similar robberies. The state argues that the evidence was admissible, as it tended to show that the robberies were committed by the same individual with a similar *modus operandi*. Regardless, the state points out that it presented evidence that a fingerprint obtained from a Hydrocodone bottle from one of the manufacturer's bottles from the pharmacy was entered into AFIS and returned a match for Appellant. The state contends that the fingerprint evidence alone, is sufficient to support Appellant's conviction.

{¶15} "Sufficiency of the evidence is a legal question dealing with adequacy." *State v. Pepin-McCaffrey*, 186 Ohio App.3d 548, 2010-Ohio-617, 929 N.E.2d 476, ¶ 49 (7th Dist.), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency is a term of art meaning that legal standard which is applied to determine whether a case may go to the jury or whether evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Draper*, 7th Dist. Jefferson No. 07 JE 45, 2009-Ohio-1023, ¶ 14, citing *State v. Robinson*, 162 Ohio St. 486, 124 N.E.2d 148 (1955). When reviewing a conviction for sufficiency of the evidence, a reviewing court does not determine "whether the state's evidence is to be believed, but whether, if believed, the

evidence against a defendant would support a conviction." *State v. Rucci*, 7th Dist. Mahoning No. 13 MA 34, 2015-Ohio-1882, ¶ 14, citing *State v. Merritt*, 7th Dist. Jefferson No. 09 JE 26, 2011-Ohio-1468, ¶ 34.

**{¶16}** In reviewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on the grounds of sufficiency unless the reviewing court determines no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id*.

**{¶17}** Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other." (Emphasis deleted.) *Thompkins*, 78 Ohio St.3d at 387. It is not a question of mathematics, but depends on the effect of the evidence in inducing belief. *Id*. Weight of the evidence involves the state's burden of persuasion. *Id*. at 390, 678 N.E.2d 541 (Cook, J. concurring). The appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 220, citing *Thompkins*, at 387, 678 N.E.3d 541, 678 N.E.2d 541. This discretionary power of the appellate court to reverse a conviction is to be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. *Id*.

**{¶18}** "[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-

6524, 960 N.E.2d 955, ¶ 118, quoting *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact is in the best position to weigh the evidence and judge the witnesses' credibility by observing their gestures, voice inflections, and demeanor. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). The trier of fact is free to believe some, all, or none of each witness' testimony and they may separate the credible parts of the testimony from the incredible parts. *State v. Barnhart*, 7th Dist. Jefferson No. 09 JE 15, 2010-Ohio-3282, ¶ 42, citing *State v. Mastel*, 26 Ohio St.2d 170, 176, 270 N.E.2d 650 (1971). When there are two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, we will not choose which one is more credible. *State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125 (7th Dist.1999).

**{¶19}** Despite the different standards, Appellant presents the exact same arguments under both sufficiency of the evidence and manifest weight of the evidence. For ease of understanding, the arguments will be jointly discussed. Beginning with the "prior bad acts" evidence, the evidence Appellant takes issue with is found within the testimony of Columbiana County Prosecutor's Office Investigator Troy Walker and Detective Greg Smith of Saint Clair Township Police Department. Investigator Walker testified that Appellant became a suspect based on conversations that he had with agencies in Clark and Franklin Counties. Investigator Walker and Det. Smith testified that Appellant's fingerprints had been entered into AFIS during the course of the Clark County investigation due to a conviction for a similar robbery. At some time after this, Columbiana County investigators learned of a bottle found along Dresden Avenue, the path the car

carrying the robbers traveled. A fingerprint was found on one of the bottles which, when sent to the AFIS system, returned a match for Appellant.

**{¶20}** Appellant first takes issue with the fact that the Clark County and Franklin County incidents were raised during Investigator Walker and Det. Smith's testimony. Appellant's counsel objected to the testimony. As this was a bench trial, no curative instruction was given.

**{¶21}** The Ohio Supreme Court created a three-step analysis when reviewing the admissibility of a prior bad act:

> The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. Evid.R. 401. The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B). The third step is to consider whether the probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice. *See* Evid.R 403.

*State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

**{¶22}** Pursuant to the analysis, we must first determine whether the evidence is relevant. The evidence regarding the out-of-county robberies provided information

pertaining to the identity of the robber, including his *modus operandi*. Thus, the evidence is relevant.

**{¶23}** Second, it must be determined whether the evidence was introduced to prove the offender's character and that the defendant acted in conformity with that character. This record reveals that the evidence was presented to show how Appellant became a suspect in this case. It appears that investigators did not have a suspect until discussing this case with agencies in Clark and Franklin Counties, which were investigating crimes with a similar *modus operandi.* In the Clark County and Franklin County cases, robbers had stolen medications similar to those in the instant case from a pharmacy. The robbers in those cases also zip tied the employees' hands and confined them in a separate room as the robbers escaped. Additionally, according to Det. Greg Smith, Appellant's fingerprints had been placed in the system due to his conviction in the related Clark County case.

**{¶24}** Hence, the evidence was admitted for the purpose of establishing the course of the investigation as to the manner in which Appellant became a suspect. The evidence was also used towards proving his identity as one of the robbers because of the similarity in how the robberies were conducted. It appears that the robberies were nearly identical. The robbers in both cases robbed a pharmacy for opiates and held the employees at gun point before eventually zip tying their hands and relocating them to a different room in order to escape. Thus, the evidence pertaining to the other robberies was not admitted to prove that Appellant acted in conformity with his character.

**{¶25}** Third, we must determine whether the probative value of the evidence was outweighed by the prejudice suffered by Appellant. Procedurally, we again note that a

curative instruction was not given, as this case involved a bench trial. As to the evidence in this case, in addition to the testimony regarding the Clark County and Franklin County robberies, evidence was presented that Appellant's fingerprints were found on a bottle matching the description of at least one stolen prescription bottle.

{¶26} Again, the bottle was found along Dresden Avenue. According to the witness who pursued the robbers' car as it drove away, the robbers traversed Dresden Avenue. The bottle contained Hydrocodone Acetaminophen combination 7.5 mg-500 mg. The packaging indicated that it was a manufacturer's bottle. Manufacturer's bottles are not available to the public due to the high amount of pills in each bottle. A report to the Drug Enforcement Agency regarding the incident listed Hydrocodone Acetaminophen combination 7.5 mg-500 mg as one of the stolen prescriptions. One bottle had an observable fingerprint that when entered into AFIS provided a match to Appellant.

{¶27} We have previously held that even a single piece of identifying evidence is sufficient to support a conviction. See *State v. Fuller,* 7th Dist. Belmont No. 14 BE 0016, 2016-Ohio-4796 (a single hair that matched the appellant's DNA profile and was found underneath the victim's body was sufficient to support a conviction in an aggravated murder case.); *State v. Ferrera,* 2015-Ohio-3822, 42 N.E.3d 224 (7th Dist.) (three thirty-nine-year old fingerprints found near a garage door that was used to gain entrance into the victim's house was sufficient to support a conviction for murder.) While this case is distinguishable from *Fuller* and *Ferrara* because the print in question was not found at the scene, the evidence leads to the conclusion that the pill bottle was removed from the scene. This is supported by the fact that the pill bottle matched the description of the stolen medication and was found along the path of the robbers' car as it fled.

Case No. 19 CO 0007

**{¶28}** We have also recently reviewed whether evidence presented of multiple robberies constituted inadmissible prior bad acts evidence. *State v. Vance,* 7th Dist. Columbiana No. 17 CO 0015, 2018-Ohio-5409. In *Vance,* evidence of a robber's physical description in a similar robbery that led to discovery of a pattern of targeting convenience stores within a specific geographic area was admitted as *modus operandi* evidence. *Id.* at ¶ 17. The evidence was properly admitted as evidence of *modus operandi* because it involved a unique set of facts regarding the identity of a robber who had targeted convenience stores along the Ohio and Pennsylvania border. The robber wore similar clothing during each robbery and witnesses provided similar information about the physical description of the robber. *Id.* at ¶ 20.

**{¶29}** The record is devoid of any evidence that Appellant was prejudiced by the admission of this evidence. Importantly, the probative value of the *modus operandi* evidence goes directly to proving the identity of the robber. As such, Appellant's first assignment of error is without merit and is overruled.

ASSIGNMENT OF ERROR NO. 2

The trial court erred in not merging the abduction counts and the robbery counts.

**{¶30}** Appellant argues that the trial court erroneously failed to merge his aggravated robbery and abduction convictions for sentencing purposes. Appellant contends that abduction is the lesser-included offense of kidnapping. As the Ohio Supreme Court has held that robbery and kidnapping are subject to merger, Appellant

believes that robbery and abduction are also subject to merger.  See *State v. Winn,* 121 Ohio St.3d 413, 2009-Ohio-1059, 905 N.E.2d 154.

**{¶31}** The state responds by first noting that the issue was not properly preserved for appeal as Appellant failed to object at sentencing.  Even so, the state argues that the fact that multiple victims were involved, and that the act of robbery was completed before the abduction in this case, means that these convictions did not involve allied offenses subject to merger.

**{¶32}** As merger presents a question of law, an appellate court must conduct a *de novo* review.  *State v. Burns*, 7th Dist. Mahoning No. 09-MA-193, 2012-Ohio-2698, ¶ 60.  However, in this case, Appellant failed to object or otherwise raise the issue at sentencing, limiting him to a plain error analysis.

**{¶33}** A three-part test is employed to determine whether plain error exists.  *State v. Billman*, 7th Dist. Monroe Nos. 12 MO 3, 12 MO 5, 2013-Ohio-5774, ¶ 25, citing *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

> First, there must be an error, *i.e.* a deviation from a legal rule. Second, the error must be plain.  To be "plain" within the meaning of Crim.R. 52(B), an error must be an "obvious" defect in the trial proceedings.  Third, the error must have affected "substantial rights."  We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.

*Billman* at ¶ 25.

**{¶34}** R.C. 2941.25(A) provides that when the same conduct involves two or more allied offenses of similar import, a defendant may only be sentenced on one offense. R.C. 2941.25(B) states that when a defendant's conduct involves two or more dissimilar offenses, or when the conduct is similar but is committed separately or with a separate animus, a defendant may be sentenced on all offenses.

**{¶35}** The Ohio Supreme Court initially laid out a two-part test: (1) a comparison of the offenses' elements; and (2) a review of the defendant's conduct and animus for each offense. See *State v. Blankenship*, 38 Ohio St.3d 116, 526 N.E.2d 816 (1988). The *Blankenship* test was later amended to include an abstract analysis of the offenses. See *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699 (1999). The Ohio Supreme Court recognized the inconsistent results produced by *Rance* and created a new test in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061.

**{¶36}** Pursuant to *Johnson*, a court is tasked with determining whether it is possible to commit one offense and also commit the other offense(s) by the same conduct. *Id.* at ¶ 48. If the answer is in the affirmative, then the court must additionally determine whether the offenses were actually committed by the same conduct, i.e. whether they were a "single act, committed with a single state of mind." *Id.* at ¶ 49. If the answer is yes, then the offenses are allied, and merge for sentencing purposes. Conversely, if the answer to either of the questions is no, then the offenses are not allied and do not merge. *Id.* at ¶ 50.

**{¶37}** The Ohio Supreme Court modified *Johnson* in *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892. The *Ruff* Court produced a fact-specific analysis that looks at the defendant's conduct, the animus, and the import. *Id.* at ¶ 26. The

resulting test asks three questions: (1) whether the offenses are dissimilar in import or significance, i.e. each offense caused a separate and identifiable harm; (2) whether the offenses were separately committed; and, (3) whether the offenses were committed with separate animus or motivation. *Id.* at ¶ 25. If the answer to any of these questions is yes, then the offenses do not merge. *Id.* The Court acknowledged that, due to the fact-specific nature of the test, results will vary on a case-to-case basis. *Id.* at ¶ 32.

**{¶38}** Although Appellant correctly states that the *Winn* Court held that robbery and kidnapping are allied offenses subject to merger, it relied on the two-part *Rance* test which is no longer good law. Regardless, the *Ruff* Court acknowledged that results may vary due to the fact specific nature of the test. In other words, although robbery and abduction may result in merger in one case, they may not in another case where the facts are different.

**{¶39}** Post *Ruff*, the Third District held that an aggravated robbery and kidnapping conviction did not merge for purposes of sentencing where the defendant's actions caused separate and distinct harms to the victim: psychological, mental, and emotional harm to one victim (a person) and economic harm to a separate victim (a business). *State v. Junod,* 3d Dist. Mercer No. 10-18-08, 2019-Ohio-743, ¶ 62.

**{¶40}** The Second District reviewed whether a robbery and abduction conviction merged for purposes of sentencing. *State v. Moore,* 2d Dist. Clark No. 2016-CA-45, 2018-Ohio-2111, ¶ 9. In *Moore,* the defendant held the employees at gunpoint to rob a store and prevented one employee from fleeing the store. *Id.* at ¶ 17. The *Moore* court held that the appellant held up the victims with the intent of committing a robbery and then prevented the employee from escaping with the separate intent of preventing that

employee's escape. The fact that the restraint occurred simultaneous with the robbery did not alter the court's analysis.

**{¶41}** Turning to the instant case, our analysis begins with the first question in *Ruff,* whether the offenses are dissimilar in import or significance. There were separate victims in this case. The indictment specified that the victim of the aggravated robbery was Buckeye. (2/14/18 Indictment, p. 1.) As to the three abduction charges, the indictment named B.B., D.D., and L.K. as the victims. As was the case with *Junod,* the harm suffered by the instant victims is separate and distinct. Buckeye suffered an economic loss due to stolen medication and cash from the register. B.B., D.D., and L.K. suffered psychological, mental, and emotional harm. Because multiple victims suffered separate and distinct harm, the *Ruff* test is satisfied and the offenses do not merge.

**{¶42}** Even if that were not the case, the second *Ruff* question asks whether the offenses were separately committed. Here, the robbery was completed once the victims were held at gun point and the drugs and money were secured by the robbers. It was after this occurred that one of the robbers zip tied the women's hands and led them to the bathroom to prevent them from alerting the police. Thus, the robbery was completed before any of the actions that led to the abduction convictions, and the offenses were separately committed.

**{¶43}** The final *Ruff* question asks whether the offenses were committed with separate animus or motivation. Similar to *Moore,* the women in this case were initially held at gun point and the intent was the robbery of the pharmacy. The women were then zip tied and led to the bathroom, with a separate motivation: to prevent them from fleeing and alerting law enforcement. Thus, the act of holding the women in order to facilitate

the robbery was separate from the actions involved in holding them at gun point while securing them in a separate room to facilitate the robbers' escape. As such, the abductions were committed with a separate motivation than the robbery.

{¶44} Accordingly, Appellant's second assignment of error is without merit and is overruled.

Conclusion

{¶45} Appellant argues that the trial court's verdict is not supported by sufficient evidence and is against the manifest weight of the evidence. Appellant also argues that the trial court erroneously failed to merge his robbery and abduction convictions. For the reasons provided, Appellant's arguments are without merit and the judgment of the trial court is affirmed.

Robb, J., concurs.

D'Apolito, J., concurs.

---

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Columbiana County, Ohio, is affirmed. Costs waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

**<u>NOTICE TO COUNSEL</u>**

**This document constitutes a final judgment entry.**