[Cite as *State v. Flack*, 2024-Ohio-4622.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2024-01-010 |
| | | CA2024-01-012 |
| | : | |
| - vs - | : | O P I N I O N |
| | : | 9/23/2024 |
| RAYMOND E. FLACK II, | : | |
| Appellant. | : | |

CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case Nos. CR2023-03-0379 and CR2023-03-0380

Michael T. Gmoser, Butler County Prosecuting Attorney, and Michael Greer, Assistant Prosecuting Attorney, for appellee.

Christopher Bazeley, for appellant.

**HENDRICKSON, J.**

{¶ 1} Appellant, Raymond E. Flack II, appeals from his convictions in the Butler County Court of Common Pleas for aggravated possession of drugs, burglary, safecracking, and criminal damaging. For the reasons set forth below, we affirm in part, reverse in part, and remand for the limited purpose of resentencing.

**Case No. CR2023-03-0380**

{¶ 2}  In Case No. CR2023-03-0380, Flack was indicted on one count of aggravated possession of drugs (methamphetamine) in violation of R.C. 2925.11(A), a felony of the third degree.  Flack pled guilty to the charge on October 16, 2023 and was subsequently sentenced to 30 months in prison on the offense.

**Case No. CR2023-03-0379**

{¶ 3}  In Case No. CR2023-03-0379, Flack was indicted on one count of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree, one count of safecracking in violation of R.C. 2911.31(A), a felony of the fourth degree, one count of possessing criminal tools in violation of R.C. 2923.24(A), a felony of the fifth degree, and one count of criminal damaging in violation of R.C. 2909.06(A)(1), a misdemeanor of the second degree.  The charges arose out of allegations that Flack trespassed into Bryan and Alexa Cantrell's garage in Middletown, Butler County, Ohio on the morning of March 5, 2023 and was found using tools to break into Bryan's gun safe.  Once confronted by Bryan, Flack fled and was later apprehended by law enforcement.

{¶ 4}  Flack pled not guilty to the charges and a jury trial commenced on December 4, 2023.  At trial, the state presented testimony from Bryan and Alexa Cantrell, three deputies from the Butler County Sheriff's Office, and Emily Bush, the individual driving the vehicle Flack was found in after he fled from the Cantrells' property.  Photographs of the Cantrells' home, garage, and gun safe were introduced into evidence.  Flack did not call any witnesses.  From the testimony and exhibits introduced into evidence, the following facts were established.

{¶ 5}  Alexa and Bryan Cantrell resided in a home on Brown's Run Road in Middletown, Ohio with their three children in March 2023.  The home had an attached

garage and a fenced in backyard. On March 4, 2023, Bryan was smoking meat in or near the garage. That evening, the family left the garage door open before going to bed. Sometime after 6:00 a.m. the following morning, Alexa woke and went into the kitchen to make herself some coffee. At that time, she heard banging noises in the garage. She woke Bryan and advised him that something or someone was in the garage. Bryan grabbed a pistol and went to investigate. According to Bryan and Alexa, it was still dark outside at that time.

{¶ 6} Rather than using the door that opened from the house into the garage, Bryan exited the house through the front door and walked around to the garage. Bryan saw a man, later identified as Flack, "using tools to break into [the] gun safe" stored in the garage. As neither Alexa nor Bryan had invited Flack into their garage or given him permission to access the gun safe, Bryan brandished his pistol and told Flack to stop. Flack dropped to the floor. During this encounter, Bryan got a clear view of Flack's face. Alexa, standing in the doorway to the home, called 9-1-1 for assistance.

{¶ 7} Although Flack was being held at gunpoint, he managed to scoot himself between two vehicles. Flack stood, put his back towards Bryan, and fled from the Cantrells' property. Flack ran across the street and into a field near the Cantrells' house. At this time, Bryan noticed a large, white SUV parked on a side street, Glen Eagle Lane, which was adjacent to the Cantrells' property. The SUV, which was parked facing Brown's Run Road, was running. Bryan had never seen the vehicle before. Bryan approached the SUV and found a woman, later identified as Emily Bush, lying in the backseat of the vehicle. Bryan tapped on the window to get Bush's attention, and he spoke with her. Bush asked Bryan if "he was okay." Bush did not identify the "he" to which she was referring. Bryan told Bush that the "he" she had been referring to had broken into his

garage before running off. Bush responded by jumping into the SUV's driver's seat and driving off. Bush ran a stop sign, turned left on Brown's Run Road, right onto Trenton Franklin Road, and drove about half a mile before stopping to let Flack into the vehicle. The SUV then took off again. Alexa, still on the phone with 9-1-1, provided a description of the SUV and its path of travel to the dispatcher.

{¶ 8} The SUV was pulled over by Butler County Sheriff's deputies on Trenton Franklin Road. Bush was driving and Flack was in the passenger seat. Bush and Flack were removed from the SUV and secured in the back of a cruiser. Deputies conducted a search of the SUV and found an impact drill, a bag of miscellaneous tools, and a Sawzall blade.

{¶ 9} Deputy Mike Day responded to the Cantrells' home. After speaking with the homeowners, Deputy Day transported Bryan to the location where the SUV was stopped. At that time, Bryan identified Flack as the individual he had found in his garage and Bush as the woman who had driven away in the SUV parked outside his home.

{¶ 10} Deputy Day transported Bryan back to his residence and the deputy processed the crime scene. Inside the garage the deputy found that Bryan's gun safe had been damaged. The safe's keypad had been ripped off and a large hole had been gorged out or cut into the safe. The rectangular shaped hole was approximately seven inches in height. Concrete and debris from the safe were laying on the floor alongside the removed keypad. Deputy Day took photographs of the damage to the gun safe.

{¶ 11} The Cantrells' home was protected by an ADT security system, which included two motion-activated cameras. One camera was placed by the home's front door and another was placed above the garage door, at the top right-hand corner. If something or someone moved in front of the cameras, the cameras would record it and

the system would send a notification to Bryan's cell phone indicating the cameras had been triggered. Bryan did not receive any notifications from the security system the evening of March 4, 2023 or the morning of March 5, 2023 and the ADT system had not recorded Flack approaching or entering the garage. Bryan believed that the security system had not recorded Flack as Flack "either went down the fence line or jumped [the Cantrells'] fence and went behind the fence line and came through the gate there and stayed underneath the camera."

{¶ 12} Bush testified that Flack had picked her up in a large SUV at approximately 2:00 a.m. or 3:00 a.m. the morning of March 5, 2023. After the two got something to eat, she climbed into the back seat and fell asleep while Flack continued to drive around. Bush claims she woke up and found herself alone in the parked SUV with a gun pointed at her. Bush stated she drove off after Bryan confronted her and, as she was driving away, she saw Flack exiting a nearby field. She stopped the SUV so Flack could enter the vehicle and then continued driving away. She was stopped shortly thereafter by law enforcement.

{¶ 13} After considering the foregoing testimony and evidence, the jury found Flack guilty of burglary, safecracking and criminal damaging but not guilty of possessing criminal tools. The trial court sentenced Flack to an indefinite sentence of 8 to 12 years in prison for burglary, 18 months in prison for safecracking, and 6 months in jail for criminal damaging. The sentences were run concurrently to one another but consecutively to the 30-month prison sentence imposed in Case No. CR2023-03-0380.

{¶ 14} Flack appealed, raising three assignments of error related to his convictions in Case No. CR2023-03-0379.[1]  For ease of discussion, we address his second and third assignments of error out of order.

{¶ 15} Assignment of Error No. 1:

{¶ 16} FLACK'S CONVICTIONS FOR BURGLARY AND SAFECRACKING ARE NOT SUPPORTED BY LEGALLY SUFFICIENT EVIDENCE.

{¶ 17} In his first assignment of error, Flack argues his conviction for burglary is not supported by sufficient evidence and is against the manifest weight of the evidence.[2] He further contends his conviction for safecracking is not supported by sufficient evidence.

{¶ 18} Whether the evidence presented at trial is legally sufficient to sustain a verdict is a question of law.  *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997); *State v. Grinstead*, 2011-Ohio-3018, ¶ 10 (12th Dist.).  When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence in order to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.).  Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the

---

1.  Flack separately appealed his convictions in Case Nos. CR2023-03-0380 and CR2023-03-0379.  The appeals were consolidated.  Flack's appellate brief did not raise any assignments of error challenging his guilty plea for aggravated possession of drugs or the sentence imposed for that offense.  Since we do not have an assignment of error to resolve relating to Case No. CR2023-03-0380, the trial court's judgment in that case is hereby affirmed.  *See State v. Rojas*, 2024-Ohio-2209, ¶ 71, fn. 6 (12th Dist.).

2.  Though the caption of his first assignment of error only addresses sufficiency of the evidence, the body of Flack's brief sets forth case law and an argument challenging both the manifest weight and the sufficiency of the evidence for his burglary conviction.  We shall therefore address both arguments.

essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

{¶ 19} A manifest weight of the evidence challenge, on the other hand, examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire trial record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). "While appellate review includes the responsibility to consider the credibility of witnesses and weight given to the evidence, 'these issues are primarily matters for the trier of fact to decide.'" *State v. Barnes*, 2011-Ohio-5226, ¶ 81 (12th Dist.), quoting *State v. Walker*, 2007-Ohio-911, ¶ 26 (12th Dist.). An appellate court, therefore, will overturn a conviction due to the manifest weight of the evidence only in extraordinary circumstances to correct a manifest injustice when the evidence presented at trial weighs heavily in favor of acquittal. *Id*., citing *Thompkins*, 78 Ohio St.3d at 387. Furthermore, although the legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different, "[a] determination that a conviction is supported by the manifest weight of the evidence will also be dispositive of the issue of sufficiency." *State v. Jones*, 2013-Ohio-150, ¶ 19 (12th Dist.).

**Burglary**

{¶ 20} Flack was convicted of burglary in violation of R.C. 2911.12(A)(2), which provides that

> [n]o person, by force, stealth, or deception, shall . . . [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense.

"Thus, the elements that the state was required to prove to convict [Flack] of burglary were (1) a trespass by force, stealth, or deception (2) into an occupied structure (3) when another was present or likely to be present (4) with the purpose to commit a criminal offense in the structure." *State v. Bertram*, 2023-Ohio-1456, ¶ 9.

{¶ 21} Flack contends his conviction is not supported by sufficient evidence or the manifest weight of the evidence because the state failed to present any evidence that he acted with "stealth" in gaining entrance to the Cantrells' garage. As the Supreme Court noted in *Bertram*, "stealth" is defined as "intended not to attract attention." *Id.* at ¶ 14, citing *Merriam-Webster's Collegiate Dictionary* 1221 (11th Ed. 2003). Stealth involves "'any secret, sly or clandestine act to avoid discovery and to gain entrance into or to remain within a residence of another without permission.'" *Id.*, quoting *State v. Ward*, 85 Ohio App.3d 537, 540 (3d Dist. 1993). "The state may demonstrate stealth through circumstantial evidence." *State v. King*, 2023-Ohio-875, ¶ 29 (12th Dist.). Circumstantial evidence has the same probative value as direct evidence. *State v. Reed*, 2023-Ohio-878, ¶ 43 (12th Dist.).

{¶ 22} After reviewing the record, we find that Flack's conviction for burglary was supported by sufficient evidence and was not against the manifest weight of the evidence.

The state presented testimony establishing all the essential elements of burglary beyond a reasonable doubt, including the disputed "stealth" element. Bryan and Alexa Cantrell both testified that sometime before 6:30 a.m. on March 5, 2023, while it was still dark outside, Flack entered their garage without their permission. The Cantrells and their children were present in the home attached to the garage. Flack entered the garage under the cover of darkness and in a manner that allowed him to avoid being seen by either of the security cameras set up on the Cantrells' property. *See State v. Biddlecome*, 2000 Ohio App. LEXIS 1540, *13 (8th Dist. Apr. 6, 2000) (noting that a defendant entering an open garage door "under the cover of darkness" was sufficient to establish the element of stealth); *State v. Montgomery*, 1995 Ohio App. LEXIS 1898, *5-6 (12th Dist. May 8, 1995) (finding sufficient evidence that the defendant committed the offense of aggravated burglary by stealth when he "entered the garage and removed the victim's property during the middle of the night, under the cover of darkness" and while wearing gloves).

{¶ 23} As Bryan testified at trial, Flack took steps to avoid detection and not set off the security cameras. Bryan noted Flack had not walked up the driveway to enter the garage, but rather "either went down the fence line or jumped [the] fence and went behind the fence line and came through the gate there and stayed underneath the camera" in order to enter the garage undetected. Flack entering the garage under the cover of darkness, without announcing his presence or walking up the driveway, and in such a manner as to avoid activating the security cameras is circumstantial evidence that he entered the garage in a clandestine or stealthy manner. Such evidence, as believed by the jury, was sufficient to find the essential element of trespass by stealth proven beyond a reasonable doubt.

{¶ 24} The state further introduced evidence demonstrating that Flack trespassed into the Cantrells' garage with the purpose of committing a theft offense. Bryan testified he found Flack trying to break into the gun safe by using bolt cutters to try to peel the steel away from the door of the safe. Bryan testified he did not give Flack permission to open the safe or to try to access its contents. The jury was entitled to rely on Bryan's testimony. "[A] conviction is not against the manifest weight of the evidence merely because the trier of fact believed the testimony of the state's witnesses." *State v. Marshall*, 2024-Ohio-4445, ¶ 52 (12th Dist.).

{¶ 25} Based on the evidence presented, the jury was entitled to find that Flack, by stealth, trespassed into the Cantrells' attached garage with the purpose of stealing the contents of the gun safe. Flack's conviction for burglary was, therefore, not against the manifest weight of the evidence and was supported by sufficient evidence.

**Safecracking**

{¶ 26} Flack also challenges his conviction for safecracking, contending that "the evidence presented at trial is sufficient to support a conviction for attempted safecracking, but not safecracking itself." Pursuant to the safecracking statute, R.C. 2911.31(A), "[n]o person, with purpose to commit an offense, shall knowingly enter, force an entrance into, or tamper with any vault, safe, or strongbox." A person acts knowingly when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). To "tamper" means to "'meddle so as to alter,' 'to make changes that are illegal, corrupting, or perverted,' or '*to interfere improperly.*'" (Emphasis in original.) *State v. Richardson*, 2013-Ohio-1953, ¶ 13 (12th Dist.), quoting *Black's Law Dictionary* (9th Ed. 2009).

{¶ 27} Contrary to Flack's assertions, we find that the state presented sufficient evidence that he committed the offense of safecracking by tampering with the gun safe. Bryan Cantrell testified that he saw Flack using tools to break into the gun safe that he kept in his garage. The gun safe had been improperly interfered with and altered—it had a large, rectangular hole, approximately seven inches in height, cut into it and the safe's keypad had been ripped off. Such evidence, when viewed in a light most favorable to the state, was sufficient to show that Flack, with the purpose of committing a theft offense, successfully tampered with the gun safe. Flack's conviction for safecracking was, therefore, supported by sufficient evidence.

{¶ 28} As Flack's conviction for safecracking was supported by sufficient evidence, we find no merit to his argument that the state only introduced evidence proving the offense of attempted safecracking. The attempt statute, R.C. 2923.02(A), provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." Here, the state proved Flack committed the offense of safecracking as he knowingly and successfully tampered with the gun safe by improperly interfering with and altering the safe by removing the keypad and cutting a large hole in it. *Accord State v. Carroll*, 14 Ohio App.3d 51, 53 (12th Dist. 1984) (finding there was sufficient evidence to convict a defendant of safecracking where the defendant broke into a bank and caused extensive damage to a safe, though he was ultimately unable to open the safe).

{¶ 29} Having found Flack's conviction for safecracking supported by sufficient evidence and his conviction for burglary supported by sufficient evidence and the manifest weight of the evidence, we overrule his first assignment of error.

{¶ 30} Assignment of Error No. 3:

{¶ 31} FLACK WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL WHO FAILED TO ASK FOR A JURY INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF ATTEMPTED SAFECRACKING.

{¶ 32} In his third assignment of error, Flack argues his trial counsel rendered ineffective representation as counsel failed to request a jury instruction for attempted safecracking as a lesser-included offense of safecracking.  Flack maintains such an instruction was warranted as the evidence demonstrated he did not breach the gun safe but rather merely damaged the safe.

{¶ 33} To prevail on his ineffective assistance of counsel claim, Flack must show that his trial counsel's performance was deficient and that he was prejudiced as a result. *State v. Harner*, 2020-Ohio-3071, ¶ 32 (12th Dist.); *Strickland v. Washington*, 466 U.S. 668, 687-688 (1984).  Trial counsel's performance will not be deemed deficient unless it fell below an objective standard of reasonableness.  *Strickland* at 688.  To show prejudice, Flack must establish that, but for his trial counsel's errors, there is a reasonable probability that the result of his trial would have been different.  *Id.* at 694.  An appellate court must give wide deference to the strategic and tactical choices made by trial counsel in determining whether counsel's performance was constitutionally ineffective.  *Id.* at 689.  "In Ohio, there is a presumption that the failure to request an instruction on a lesser-included offense constitutes a matter of trial strategy and does not by itself establish plain error or the ineffective assistance of counsel."  *State v. Riley*, 2007-Ohio-4409, ¶ 5 (10th Dist.), citing *State v. Griffie*, 74 Ohio St.3d 332, 333, 1996-Ohio-71.  The failure to satisfy either the deficiency prong or the prejudice prong of the *Strickland* test is fatal to an ineffective assistance of counsel claim.  *Harner* at ¶ 32.

{¶ 34} "[A] jury instruction on a lesser included offense is required only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction on the lesser included offense." *State v. Tolle*, 2015-Ohio-1414, ¶ 11 (12th Dist.). An instruction on the lesser included offense is only warranted if there is "sufficient evidence to allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense." (Emphasis in original.) *State v. Trimble*, 2009-Ohio-2961, ¶ 192.

{¶ 35} As set forth above, there is a presumption that the failure to request a jury instruction on a lesser-included offense constitutes a matter of trial strategy. Assuming, arguendo, that Flack rebutted this presumption and showed deficient performance by his trial counsel, Flack's ineffective assistance of counsel claim nonetheless fails as Flack cannot demonstrate a reasonable probability that, but for counsel's conduct, the outcome of the trial would have been different. A person is guilty of safecracking if he, "with purpose to commit an offense . . . knowingly . . . tamper[s] with any vault, safe, or strongbox." R.C. 2911.31(A). To "tamper" means to "to meddle so as to alter" and "to interfere improperly [with]." *Richardson*, 2013-Ohio-1953 at ¶ 13. The evidence introduced at trial overwhelmingly demonstrated that Flack knowingly tampered with Bryan Cantrell's gun safe by improperly interfering with and altering the safe. Bryan testified he found Flack in his garage trying to gain access to the gun safe. The safe's keypad had been ripped off and a large, rectangular hole had been cut into the safe. At that point, Flack had already knowingly tampered with the safe. Under the circumstances of the present case, the jury was not in a position to reasonably reject the greater offense of safecracking but find Flack guilty of the lesser included offense of attempted

safecracking.  As Flack cannot establish the prejudice prong of the ineffective-assistance-of-counsel claim, his argument fails and his third assignment of error is overruled.

{¶ 36}  Assignment of Error No. 2:

{¶ 37}  THE TRIAL COURT ERRED BY NOT MERGING FLACK'S CONVICTIONS FOR SAFECRACKING AND CRIMINAL DAMAGING.

{¶ 38}  In his second assignment of error, Flack contends the trial court committed plain error by failing to merge his convictions for safecracking and criminal damaging as allied offenses of similar import.

{¶ 39}  An appellate court typically reviews de novo whether two offenses are allied offenses of similar import.  *State v. Williams*, 2012-Ohio-5699, ¶ 28; *State v. Clowers*, 2019-Ohio-4629, ¶ 32 (12th Dist.).  However, Flack did not raise the issue of allied offenses at sentencing and did not object to the safecracking and criminal damaging offenses not being merged.  Where a defendant fails to raise the issue of allied offenses of similar import in the trial court, the accused "forfeits all but plain error, and a forfeited error is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice."  *State v. Rogers*, 2015-Ohio-2459, ¶ 3.

{¶ 40}  Pursuant to R.C. 2941.25, Ohio's allied-offenses statute, the imposition of multiple punishments for the same criminal conduct is prohibited.  *State v. Seymore*, 2022-Ohio-2180, ¶ 13 (12th Dist.).  In determining whether offenses are allied, courts are instructed to consider three separate factors—the conduct, the animus, and the import.  *State v. Ruff*, 2015-Ohio-995, paragraph one of the syllabus.  Offenses do not merge, and a defendant may be convicted and sentenced for multiple offenses if any of the following are true: (1) offenses are dissimilar in import or significance, (2) the conduct shows that

- 14 -

the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id*. at ¶ 25. "Two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Id*. at paragraph two of the syllabus.

{¶ 41} Flack argues, and the state concedes, that his safecracking and criminal damaging offenses should have been merged as allied offenses of similar import. As set forth above, a person is guilty of safecracking if he, "with purpose to commit an offense . . . knowingly . . . tamper[s] with any vault, safe, or strongbox." R.C. 2911.31(A)(1). A person is guilty of criminal damaging if he "cause[s], or create[s] a substantial risk of physical harm to any property of another without the other person's consent . . . knowingly, by any means." R.C. 2909.06(A)(1).

{¶ 42} Given the evidence in the record before us, we find that the trial court committed plain error in not merging Flack's convictions for safecracking and criminal damaging. The offenses of safecracking and criminal damaging were committed with the same conduct and the same animus, resulting in the same harm to the same victim. We therefore sustain Flack's second assignment of error. The judgment of the trial court is reversed and the matter is remanded for resentencing. Upon remand, the state can elect which allied offense to pursue, and the trial court must accept the state's choice and merge the crimes into a single conviction for sentencing. *State v. Whitfield*, 2010-Ohio-2, ¶ 20; *State v. Powih*, 2017-Ohio-7208, ¶ 43.

{¶ 43} Judgment affirmed in part, reversed in part, and the cause remanded for resentencing consistent with this opinion.

BYRNE, P.J. and PIPER, J., concur.