[Cite as *State v. Coleman*, 2025-Ohio-4988.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

STATE OF OHIO, :

    Appellee, : CASE NO. CA2025-03-017

vs. : <u>OPINION AND</u>
<u>JUDGMENT ENTRY</u>
11/3/2025

RECO ALEXANDER COLEMAN, :

    Appellant. :

:

CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2024 CR 000335

Mark J. Tekulve, Clermont County Prosecuting Attorney, and Zachary K. Garrison, Assistant Prosecuting Attorney, for appellee.

Jonathan R. Sinclair, for appellant.

# **O P I N I O N**

**SIEBERT, J.**

{¶ 1} Appellant, Reco Alexander Coleman, appeals his convictions in the Clermont County Court of Common Pleas. Upon review, we find that Coleman's convictions were supported by the manifest weight of the evidence, were not the result of

ineffective assistance of counsel, and the trial court did not err in failing to merge the relevant offenses. Accordingly, the trial court's judgment is affirmed.

## I. Factual Background

{¶ 2} Coleman was in a relationship with Brandi Roberts. The two had a one-year-old daughter named Jane.[1] In the week leading to the incident, Coleman repeatedly demanded money from Brandi. When she explained she was short, Coleman sent a series of demeaning and threatening messages, including:

> **[Coleman]:** I'll see u Thursday bitch for that 580 all singles
>
> . . .
>
> **[Coleman]:** Ima still see Thursday dumb bitch
>
> **[Brandi]:** I don't have it.
>
> **[Coleman]:** Have my 600 or u dead u have to watch over her [their daughter] from yo grave

He also threatened to "beat [the fuck]" out of her.

{¶ 3} On May 2, 2024, Coleman went to Brandi's home and knocked softly on the door. Believing it was her mother, Brandi opened the door and was confronted by Coleman, who immediately demanded money. Brandi gave him $280, but Coleman insisted on receiving more. Brandi told Coleman that she did not have any more money to give him. Coleman then ordered her to drive to the bank and withdraw more money. As Brandi prepared to leave, she buckled Jane into her car seat. While she did so, Coleman pressed a firearm against Brandi's side and repeated his demand for money.

{¶ 4} Coleman followed Brandi in his own vehicle. Fearing what Coleman might do, Brandi initially drove toward her bank but ultimately decided to evade him instead. A

---

1. Jane is a pseudonym, which we are using for purposes of privacy and readability. *State v. Kofron*, 2024-Ohio-3233, ¶ 2, fn. 1 (12th Dist.).

chase ensued. Brandi sped away as Coleman pursued her closely. She eventually pulled into a parking lot with the intention of escaping through the back, but Coleman blocked her in and began backing her vehicle down an alley. He then got out of his car and approached her vehicle on foot. Brandi, however, managed to maneuver around him and flee the scene. She then called her mother, who contacted the police. Brandi met her mother and responding officer at Mt. Moriah Cemetery. Coleman was later arrested at his place of employment.

## II. Indictment and Jury Trial

{¶ 5}   On May 9, 2024, Coleman was indicted on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony, two counts of abduction in violation of R.C. 2905.02(A)(2), third-degree felonies, and one count of endangering children in violation of R.C. 2919.22(A), a first-degree misdemeanor. He was also charged with aggravated burglary in violation of R.C. 2911.11(A)(1), a first-degree felony. Coleman pled not guilty, and the case proceeded to a jury trial.

{¶ 6}   At trial, the State presented testimony from Brandi, her mother, and law enforcement officers. Brandi recounted Coleman's repeated demands for money, his insistence that she withdraw additional funds from the bank, and his use of a firearm while she attempted to secure their daughter in the car. The State also introduced evidence from Coleman's police interview, during which he admitted going to Brandi's home to collect money, acknowledged that he "maybe made a threat about money," and admitted to chasing her vehicle and attempting to intimidate her with a firearm. During a subsequent search of Coleman's vehicle, officers discovered Coleman's wallet and a loaded firearm.

{¶ 7}   At the close of the State's case, the trial court granted Coleman's Crim. R. 29 motion to dismiss the aggravated burglary charge. Coleman called his mother as a

- 3 -

witness, but her testimony provided little relevant information. The jury ultimately found Coleman guilty of the remaining counts. The trial court sentenced him to an aggregate prison term of 11.5 to 13.5 years. Coleman now appeals, raising three assignments of error for review.

### III. Appeal

### A. Merger of Offenses

{¶ 8}   In his first assignment of error, Coleman argued that the trial court erred by failing to merge his convictions for aggravated robbery and abduction, asserting that these offenses are allied offenses of similar import under R.C. 2941.25.

{¶ 9}   Coleman did not raise the issue of merger at sentencing and concedes that the applicable standard of review is plain error. Under this standard, an alleged error is not reversible unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice. *State v. Rogers*, 2015-Ohio-2459, ¶ 3.

{¶ 10}  Ohio's allied-offenses statute, R.C. 2941.25, prohibits multiple punishments for the same criminal conduct. *State v. Flack*, 2024-Ohio-4622, ¶ 40 (12th Dist.). In determining whether offenses are allied and subject to merger, courts must consider three separate factors—the defendant's conduct, the animus, and the import of the offenses. *State v. Ruff*, 2015-Ohio-995, ¶ 25. Offenses do not merge—and separate convictions and sentences are permitted—if any of the following are true: (1) the offenses are dissimilar in import or significance, (2) the conduct shows that the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation. *Id*.

{¶ 11}  While aggravated robbery and abduction may, under certain circumstances, be allied offenses, the determination depends on the specific facts of the case. *State v. Boyd*, 2020-Ohio-812, ¶ 38 (7th Dist.). The Second District held that a defendant who

held store employees at gunpoint during a robbery and prevented one from fleeing acted with separate intents—first to commit the robbery, and second to restrain the victim—thus precluding merger. *State v. Moore*, 2018-Ohio-2111, ¶ 17 (2d Dist.). The fact that the restraint occurred simultaneously with the robbery did not compel merger. *Id*.

{¶ 12} Applying the *Ruff* test to the facts here, we find that Coleman's convictions for aggravated robbery and abduction do not merge. The first factor of the Ruff test includes determination of whether the offenses were of dissimilar import. That is, "[t]wo or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable." *Ruff* at paragraph two of the syllabus. The aggravated robbery was committed against Brandi and involved both economic loss and the threat of physical harm, specifically when Coleman pressed a firearm against her side and repeated his demand for more money. The abduction offenses were committed against both Brandi and their daughter Jane. These offenses arose when Coleman demanded Brandi drive to the bank and followed them closely in his vehicle. The abduction also created a separate and identifiable harm—namely, a dangerous vehicular pursuit that placed both victims at significant risk when Brandi attempted to flee the scene.

{¶ 13} As to the second *Ruff* factor, the offenses were separately committed. The aggravated robbery occurred at Brandi's apartment complex, where Coleman demanded money and pressed a firearm against her side. While the abduction may have begun at the same location, it continued across public roadways and culminated in a confrontation in a parking lot. Coleman's actions extended the restraint beyond a momentary detention, involved substantial movement, and created an independent risk of harm.

{¶ 14} Regarding the third *Ruff* factor, the offenses were committed with separate

animus. Coleman initially held Brandi at gunpoint with the intent to compel her to withdraw additional money. When Brandi changed course and attempted to flee, Coleman pursued her through traffic, blocked her vehicle, and backed her down an alley. These actions reflect a distinct intent to control and intimidate beyond the scope of the initial robbery.

{¶ 15} Accordingly, the offenses were committed with distinct import, at different times, and with a separate animus. Coleman's first assignment of error is without merit and is therefore overruled.

### B. Sufficiency and Weight of the Evidence

{¶ 16} In his second assignment of error, Coleman contends that his convictions involving Jane were not supported by sufficient evidence and were against the manifest weight of the evidence.

{¶ 17} When reviewing the sufficiency of the evidence underlying a conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Paul*, 2012-Ohio-3205, ¶ 9 (12th Dist.). Therefore, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*.

{¶ 18} A manifest weight of the evidence challenge examines the "inclination of the greater amount of credible evidence, offered at a trial, to support one side of the issue rather than the other." *State v. Barnett*, 2012-Ohio-2372, ¶ 14 (12th Dist.). To determine whether a conviction is against the manifest weight of the evidence, the reviewing court must look at the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in resolving the conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of

justice that the conviction must be reversed, and a new trial ordered. *State v. Graham*, 2009-Ohio-2814, ¶ 66 (12th Dist.). A finding that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. *State v. Whitt*, 2018-Ohio-1257, ¶ 13 (12th Dist.).

{¶ 19} As to the offenses involving Jane, Coleman was convicted of abduction in violation of R.C. 2905.02(A)(2), which prohibits knowingly restraining another's liberty by force or by threat under circumstances creating a risk of physical harm or placing the victim in fear. He was also convicted of endangering children under R.C. 2919.22(A), which prohibits creating a substantial risk to a child's health or safety by violating a duty of care, protection, or support.

{¶ 20} At trial, Brandi testified that she placed Jane in a car seat and began driving while Coleman followed her. She stated that she did not feel free to go based upon Coleman's threats and because he was pursuing her vehicle. Brandi attempted to evade Coleman by driving away from the bank, but he continued to follow closely as they sped through traffic. Eventually, Brandi pulled into a parking lot, where Coleman blocked her in, backed her down an alley, and began walking towards her on foot. Brandi was only then able to swerve past him and escape.

{¶ 21} Contrary to Coleman's assertions, this testimony provided sufficient evidence for the jury to conclude that he knowingly, and without privilege, used force or threats to restrain Jane under circumstances that created a risk of physical harm. The evidence also demonstrated that Coleman created a substantial risk to Jane's health or safety, satisfying the elements of the child endangering statute.

{¶ 22} Moreover, the jury, as the trier of fact, was in the best position to assess the credibility of the witnesses. A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution's witnesses. *State v. Lunsford*,

2011-Ohio-6529, ¶ 17 (12th Dist.). In this case, we find Coleman's convictions are both supported by sufficient evidence and are not against the manifest weight of the evidence. Accordingly, Coleman's second assignment of error is overruled.

### C. Ineffective Assistance of Counsel

{¶ 23} In his third assignment of error, Coleman asserts that he received ineffective assistance of counsel. To prevail on such a claim, an appellant must demonstrate: (1) that trial counsel's performance was deficient; and (2) that the deficiency prejudiced the defense to the point of depriving the appellant of a fair trial. *State v. Vore*, 2013-Ohio-1490, ¶ 14 (12th Dist.).

{¶ 24} Counsel's performance will not be deemed deficient unless it "fell below an objective standard of reasonableness." *State v. Vunda*, 2014-Ohio-3449, ¶ 54 (12th Dist.). To show prejudice, the appellant must prove there exists "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. Failure to satisfy either prong of the analysis negates a court's need to consider the other. *State v. Clarke*, 2016-Ohio-7187, ¶ 49 (12th Dist.).

{¶ 25} Coleman first argues his counsel was ineffective for failing to argue that his aggravated robbery conviction should have merged with the remaining offenses. He also contends that counsel should have moved for acquittal under Crim.R. 29 on the abduction and child endangering charges involving Jane. However, as discussed in the first and second assignments of error, the convictions were supported by the manifest weight of the evidence and were not subject to merger. Because these arguments would have been meritless, counsel's performance was not deficient. *State v. Kremer*, 2018-Ohio-3339, ¶ 27 (12th Dist.) (holding that it is not ineffective assistance to refrain from raising meritless issues).

{¶ 26} Coleman next claims ineffective assistance based on counsel's failure to

object to testimony regarding his level of parental support. Specifically, the State asked Brandi whether Coleman was an equal co-parent and whether he provided financial assistance. Brandi testified that Coleman did not contribute significantly to Jane's care or financial needs.

{¶ 27} Generally, a failure to object is considered a matter of trial strategy and does not, by itself, establish ineffective assistance. *State v. Cappadonia*, 2010-Ohio-494, ¶ 61 (12th Dist.). Moreover, trial counsel is strongly presumed to have rendered effective assistance and to have made strategic decisions within the bounds of reasonable professional judgment. *State v. Setty*, 2014-Ohio-2340, ¶ 60 (12th Dist.).

{¶ 28} Here, there is no basis to second-guess counsel's decision not to object. The State's questioning was relevant to Coleman's relationship with Brandi and their child, and it supported the prosecution's theory that Coleman was demanding money that did not belong to him. Additionally, Coleman has not shown a reasonable probability that the outcome of the trial would have been different had counsel objected. The evidence of guilt in this case was substantial, including Brandi's credible testimony, corroborating video footage, and physical evidence recovered from Coleman's vehicle.

{¶ 29} Accordingly, Coleman's third assignment of error is without merit and is overruled.

{¶ 30} Judgment affirmed.

BYRNE, P.J., and PIPER, J., concur.

## J U D G M E N T   E N T R Y

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, affirmed.

It is further ordered that a mandate be sent to the Clermont County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed in compliance with App.R. 24.

/s/ Matthew R. Byrne, Presiding Judge

/s/ Robin N. Piper, Judge

/s/ Melena S. Siebert, Judge